# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAYCI LYNN TATSCH-CORBIN, ) <br> in her own right and as Administratrix ) <br> of the Estate of JEREMY CORBIN, ) <br> KAYCI LYNN TATSCH-CORBIN, as ) <br> Guardian of KAYLOB JOSEPH TATSCH ) <br> and KAMERON SAMUEL CORBIN and ) <br> TOMMI SUE NORRIS, as Guardian of ) <br> JOSHUA TRAI CORBIN and MARCADIES ) <br> JENICA CORBIN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JENNIFER FEATHERS, in her individual ) <br> capacity, PRIMECARE MEDICAL, ) <br> INC. and BLAIR COUNTY, ) <br> PENNSYLVANIA, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. 3:2007-197 <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> JUDGE GIBSON |

## MEMORANDUM OPINION AND ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on Defendant Jennifer Feathers' Motion to Dismiss Amended Complaint (Document 28) (hereinafter "Feathers' Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion will be denied.

### JURISDICTION AND VENUE

This action was initiated pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, for alleged constitutional violations of the Fourteenth Amendment's prohibition against deprivations of life without due process of law. This Court has original jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and

1343. Supplemental jurisdiction over the Plaintiff's state law claims derives from 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

This action arises from the death of Jeremy Corbin (hereinafter "Corbin"), who was incarcerated in the Blair County Prison (hereinafter "prison"). Plaintiffs' Amended Complaint (Document 21) (hereinafter "A.C."), ¶ 6. In following prison policy, an intake officer questioned Corbin upon his arrival at the prison pursuant to a "*Suicide Prevention Screening* form...to ascertain...whether Corbin posed a heightened risk of attempting suicide in the facility." A.C., ¶ 7. "The intake officer noted on the screening form that [Corbin] was 'thinking of killing himself,'" and that Corbin had attempted suicide in the past. A.C., ¶ 8. It was also noted that Corbin "showed 'signs of depression,' appeared to 'feel unusually embarrassed or ashamed,' was 'acting and/or talking in a strange manner,' and had a 'psychiatric history' of bipolar/schizophrenia." A.C., ¶ 8. Upon completion of this screening procedure, "Corbin presented a substantial risk of committing suicide, well over the numerical threshold governing the screening instrument." A.C., ¶ 9. As a result, "Corbin was placed in a suicide observation cell... rather than [in the] general population cell block." A.C., ¶ 11. "[T]he suicide observation cell...contained no bed sheets or other articles" which could be utilized in committing suicide. Additionally, per "the Prison's suicide prevention protocol,...Corbin's clothing was taken from him" in order to prevent its use in a suicide attempt. A.C., ¶ 12. "[Corbin] was given a tear away gown" and was periodically monitored by guards. A.C., ¶ 12.

"[T]he Prison's intake officer referred the matter to Jennifer Feathers [(hereinafter "Feathers"),]

2

the jail's Forensic Specialist,"[1] for an assessment of "Corbin's mental health." A.C., ¶ 13. Feathers' work assignment at the prison was based upon "a Comprehensive Health Services Agreement between Blair County and PrimeCare Medical, Inc." (hereinafter "PrimeCare"); PrimeCare thereafter subcontracted with Altoona Regional Health System (hereinafter "ARHS"), Feathers' employer. A.C., ¶¶ 14, 15. PrimeCare "provide[d] comprehensive medical and mental health services to inmates [at the prison.]" A.C., ¶ 15. ARHS professionals working pursuant to the contract were identified in the contract as "independent contractors." Psychological Services Independent Contractor Agreement (Document 28-2), ¶ 11. PrimeCare had in place a Suicide Prevention Policy, which read

> that if a PrimeCare staff member or a correctional officer 'identifies someone who is potentially suicidal, the inmate...is [to be] placed on suicide precautions and...referred immediately to mental health staff'; that an 'evaluation will be conducted by a qualified mental health professional, who will designate the individual's level of suicide risk, level of supervision needed, and need for transfer to an inpatient mental health facility or program'; and that '[o]nce an inmate is placed on suicide watch, he/she should only be removed from the watch with the authorization of the Psychiatrist/Psychologist.'

A.C., ¶ 18. It is alleged that it was "custom and practice" for Feathers to assess those prisoners in "suicide observation cells...and [she] was permitted...to unilaterally remove inmates from those cells without the authorization of either a psychiatrist, a psychologist, or other qualified, licensed mental health professional." A.C., ¶ 19. "[A] psychiatrist retained by PrimeCare worked in the Blair County Prison and was available to" assess the condition of inmates. A.C., ¶ 29.

On October 18, 2006, approximately seven hours after assessment by the prison intake officer, Feathers assessed Corbin for his risk of suicide. A.C., ¶ 31. During that meeting, it came to Feathers'

---

[1] Feathers "was neither a psychiatrist, psychologist, nor any other category of licensed mental health professional." A.C. ¶ 14.

attention that Corbin: "had been diagnosed by psychiatric professionals as having a bipolar disorder; had a history of multiple inpatient hospitalizations in psychiatric facilities; had been prescribed a regimen of psychotropic medications at the time of his admission to the [p]rison; had attempted suicide a few years prior to his arrest; had not previously been confined to a prison setting, and; was recently estranged from his wife and children in connection with the protection...[from] abuse matter that precipitated his imprisonment." A.C., ¶ 32. Feathers observed "that Corbin was tearful, had a dysphoric mood, had a restricted affect, and reported a history of panic attacks." A.C., ¶ 33. After this interview, Feathers determined that Corbin did not present a suicide risk and "cleared him for release to a general population cell block." A.C., ¶ 34. That same morning, Corbin was transferred to a general population cell block. A.C., ¶ 35.

On October 19, 2006, Corbin was escorted to and from "a hearing at the Blair County Courthouse" by sheriff deputies, who reported to the admitting officer upon their return to the Prison "that Corbin had made repeated [suicidal] threats...while in their custody." A.C., ¶¶ 41, 43. The admitting officer advised Feathers of the threats and requested an evaluation of Corbin. A.C., ¶ 44. Feathers saw Corbin that same day, after reviewing his "mental health records from a psychiatric facility where Corbin had been treated five days prior to his incarceration." A.C., ¶ 45. The records revealed Corbin's reports of "auditory hallucinations as well as 'ideas of reference in addition to extreme panic....'" A.C., ¶ 45. Feathers "unilaterally determined" to keep Corbin "in a general population cell block." A.C., ¶ 46. Additionally, Feathers taught Corbin "relaxation techniques for using w[ith] anxiety symptoms" and made a "contract" with Corbin in which he promised "not to attempt to kill himself while in the prison." A.C., ¶ 46. On October 20, 2006, Corbin hung himself with a bed sheet inside a

4

general population cell and died later that day from asphyxiation. A.C., ¶ 47.

Plaintiffs' Amended Complaint, pursuant to 42 U.S.C. § 1983, alleges a violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. A.C., ¶¶ 53, 54. Plaintiffs seek damages under the Pennsylvania Survival Act on behalf of Corbin's estate and the Pennsylvania Wrongful Death Act on behalf of Corbin's survivors. A.C., ¶¶ 55-60. Corbin's wife also states a claim of loss of consortium. A.C., ¶ 61-62. Plaintiffs seek compensatory damages, punitive damages, and attorneys' fees, costs, and expenses generated pursuant to this suit. *See* A.C., p. 16.

Feathers has filed a Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. **Feathers' Motion to Dismiss Amended Complaint**

### A. **Motion to Dismiss Standards**

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6):

[T]he district court [is] required...to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)(citations omitted). "[T]he complaint should be dismissed only if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *D.P. Enters., Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir. 1984). "In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). "[O]nce a claim has been stated adequately, it may be supported by showing any

5

set of facts consistent with the allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1969, 167 L.Ed. 2d 929, 945 (2007) (citations omitted). A complaint that states "a plausible entitlement to relief" is the complaint that survives a Rule 12(b)(6) motion as well as satisfies the Rule 8 pleading requirements. *Bell Atlantic*, __ U.S. at __, 127 S.Ct. at 1964-65, 1967, 167 L.Ed. 2d at 940, 942. In a § 1983 action, "plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any [Constitutional] right . . . ." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). In evaluating a motion to dismiss, the Court is not deciding the issue of whether "plaintiffs will ultimately prevail," but is deciding if the plaintiffs "are entitled to offer evidence to support their claims." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (citation omitted). "[A] defendant may supplement the complaint by adding exhibits such as public records and other indisputably authentic documents underlying the plaintiff's claims." *Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003) (citations omitted).

**B.    Analysis**

### 42 U.S.C. § 1983 Claim

Feathers moves for dismissal of the 42 U.S.C. §1983 claim in her Motion to Dismiss and sets forth an argument in favor of dismissal in her Brief in Support of Motion to Dismiss Plaintiffs' Amended Complaint. (Document Nos. 28, 29) (hereinafter "Motion" and "Feathers' Brief," respectively). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-2255, 101 L.Ed. 2d 40, 48-49 (1988). Feathers contends that she did not act under color of state law because she lacked a contractual

6

relationship with either the prison or PrimeCare; she claims that she was an employee of ARHS and cannot be considered a "state actor." Feathers' Brief, pp. 3-4. This is incorrect.

"Where the actors are not state or municipal officials, but are private individuals or associations, [a court] still must address whether their activity can nevertheless be deemed to be under color of law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). Individuals who provide medical treatment to prison inmates have been held in appropriate circumstances to have acted under color of state law for the purposes of § 1983. *See West*, 487 U.S. at 54-57, 108 S.Ct. at 2258-2260, 101 L.Ed. 2d at 53-55; *Walker v. Horn*, 385 F.3d 321, 332, n.24 (3d Cir. 2004). "A physician under contract...to provide medical services to prison inmates, but not employed directly by the state, acts under the color of state law when treating an inmate." *Conner v. Donnelly*, 42 F.3d 220, 224 (4th Cir. 1994) citing *West*, 487 U.S. at 54-57, 108 S.Ct. at 2258-2260, 101 L.Ed. 2d at 53-55. "A direct employment relationship with the state is not required to find that a physician who treated a prison inmate acted under color of state law." *Conner*, 42 F.3d at 224. Medical personnel "can treat a prisoner only with the state's authorization," as inmates are not entitled to secure their own medical care providers. *Conner*, 42 F.3d at 225. "It is [one's]...function with the state system, not the precise terms of...employment, that determines whether [one's] actions can be fairly attributed to the State." *West*, 487 U.S. at 55-56, 108 S.Ct. at 2259, 101 L.Ed. 2d at 54. Feathers served a specific function within the state system; she was a "forensic specialist." Prisons are required by law to provide adequate medical care to inmates. Feathers' role was to provide mental health care to inmates at the prison, regardless of her other job responsibilities through ARHS or the contractual nuances through which she came to work at the prison. She provided mental health care to inmates, in this case to Corbin, which she could not have done without the authorization of the state. Therefore, Feathers can be

7

deemed a state actor for purposes of 42 U.S.C. § 1983.

In addition to establishing that the Defendant acted under color of law, the Plaintiffs must also establish that Feathers acted with deliberate indifference to Corbin's condition. "[A] plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability." *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991). In order to establish liability, Plaintiffs must prove that the Defendant "[knew] of and disregard[ed] an excessive risk to the inmate's health or safety." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed. 2d 811, 825 (1994). Plaintiffs must show that Feathers was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that she drew] the inference." *Natale*, 318 F.3d at 582; *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979, 128 L.Ed. 2d at 825. A factfinder may determine the actor's knowledge through "circumstantial evidence" or "may conclude that [an actor] knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842, 114 S.Ct. at 1981, 128 L.Ed. 2d at 828.

Knowledge of an inmate's particular vulnerability to suicide can be established through psychiatric history: "Custodians have been found to 'know' of a particular vulnerability to suicide when they have had actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." *Colburn*, 946 F.2d at 1025, n.1. The facts alleged suggest that Corbin had made various threats to kill himself, which had been taken seriously enough by prison officials to warrant the request of an evaluation by a mental health professional. Corbin had a documented history

8

of attempted suicide and psychiatric hospitalization, of which Feathers was allegedly aware. Nevertheless, Feathers removed Corbin from the suicide observation cell in which he had originally been placed. Under the standards set forth above, a jury could find that Feathers displayed deliberate indifference to Corbin's condition and therefore, she could be found liable for a violation of § 1983.

"[W]hen the factual scenario presented by a plaintiff suggests that [the defendant] should have known that a prisoner was a suicide risk, and failed to take necessary and available precautions to protect the prisoner from self-inflicted wounds, the complaint will survive dismissal." *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir. 1988). It has been sufficiently alleged that Feathers was a state actor for the purposes of § 1983, exposing her to liability. Further, there are sufficient facts alleged to establish that Feathers should have known, or did know, that Corbin presented a suicide risk and failed to take necessary or available precautions to protect Corbin, and thereby sufficiently pleading deliberate indifference. For these reasons, the Defendant's Motion to Dismiss the § 1983 claim is denied.

## Immunity

Feathers also claims that she is not subject to liability under 42 U.S.C. § 1983 because she possesses immunity under the Pennsylvania Mental Health Procedures Act (hereinafter "PMHPA"). "The [PMHPA] provides civil immunity [to]' any individual involved in a decision to treat or discharge any person for mental health issues, [with the exception of decisions which have been] made with willful disregard or gross negligence." Feathers' Brief, p. 5. However, a grant of immunity by state law does not impact or prevent potential § 1983 liability. "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983...cannot be immunized by state law." *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed. 2d 481, 488 (1980). "[A state] immunity statute...has no force when applied

9

to suits under the Civil Rights Acts. The supremacy clause of the Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law." *Good v. Dauphin County Social Services for Children & Youth*, 891 F.2d 1087, 1090-1091 (3d Cir. 1989). Feathers is clearly not immune to suit under § 1983, as it is a federal law, from which one cannot be immunized by state law. Therefore, Defendant's Motion to Dismiss on the basis of immunity is denied.

## Punitive Damages

Feathers contends that punitive damages should not be available to the Plaintiffs in this case, alleging that "there is no factual basis" for Plaintiffs' request for punitive damages. Feathers' Brief, p. 6. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct...involves reckless or callous indifference to the federally protected rights of others....[T]his threshold applies even when the underlying standard for liability for compensatory damages is one of recklessness." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed. 2d 632, 651 (1983). For § 1983 purposes, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836-837, 114 S.Ct. at 1978-1979, 128 L.Ed. 2d at 825. Punitive damages have been found to be available at the discretion of the jury in cases such as this, where the standard for establishing liability is one of recklessness, or deliberate indifference. In alleging deliberate indifference per their § 1983 claim, Plaintiffs have alleged more than negligence. Feathers contends that the facts contain allegations of negligence at best. However, a § 1983 claim requires conduct beyond mere negligence. The facts allege reckless conduct and therefore, at this juncture the punitive damages claim is sufficient. Feathers' Motion to Dismiss as to the availability of punitive damages is denied.

10

### Attorneys' Fees

Defendant concedes that if it is determined that Feathers is liable for a § 1983 violation, then attorneys' fees "may be appropriate." Feathers' Brief, p. 6. Defendant bases her Motion to Dismiss on the suggestion that Plaintiffs cannot support a claim for liability under § 1983. Feathers' Brief, p. 6. Given that the Plaintiffs' § 1983 claim survives the present motion, an award of attorneys' fees remains as a possible remedy. Therefore, Feathers' Motion to Dismiss as to attorneys' fees is denied.

### CONCLUSION

In conclusion, Plaintiffs have alleged sufficient facts to establish that Feathers acted under color of law and with deliberate indifference. Feathers is not immune based on Pennsylvania law and therefore the Motion to Dismiss based on immunity will be denied. Both punitive damages and attorneys' fees are sufficiently plead and therefore, both will remain possible remedies.

An appropriate Order follows.

11

AND NOW, this 30th day of May, 2008, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT: Defendant Jennifer Feathers' Motion to Dismiss Amended Complaint (Document No. 28) is DENIED; IT IS FURTHER ORDERED THAT Defendant Feathers shall answer the Amended Complaint on or before June 20, 2008.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**